**IN THE COURT OF APPEALS OF IOWA**

No. 14-1752
Filed January 14, 2015

**IN THE INTEREST OF A.K. and A.W.,**
Minor Children,

**R.W., Mother,**
     Appellant.
_____

     Appeal from the Iowa District Court for Delaware County, Thomas Straka,

Associate Juvenile Judge.


     A mother appeals from the order terminating her parental rights.

**AFFIRMED.**


     Cory R. Gonzales of Law Firm of Cory R. Gonzales, P.L.L.C., Strawberry

Point, for appellant mother.

     Kimberly Lange, Edgewood, for father of A.K.

     Kathryn A. Duccini, Dubuque, for father of A.W.

     Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant

Attorney General, John Bernau, County Attorney, and Courtney E. Vorwald,

Assistant County Attorney, for appellee State.

     Daniel H. Swift, Manchester, for minor children.


     Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DANILSON, C.J.**

A mother appeals the termination of her parental rights to her children, A.K. and A.W.[1] The mother does not dispute that two of the statutory grounds for termination have been met. She contends she should be given an additional six months to work toward reunification, pursuant to Iowa Code section 232.104(2)(b) (2013). She also contends that she is so bonded with the children that termination is detrimental, pursuant to section 232.116(3)(c). Because we cannot say the conditions that led to removal would no longer exist if the mother was granted a six-month extension, and the mother's bond does not weigh against termination, we affirm the juvenile court's order terminating the mother's parental rights.

**I. Background Facts and Proceedings.**

A.K. was born in October 2008, and A.W. was born in September 2012. The Iowa Department of Human Services (DHS) was previously involved with the mother when the mother was thirteen years old and pregnant with A.K. DHS became involved with the family again in September 2013 due to the mother's use of methamphetamine.

Both children were removed from the mother's care on September 16, 2013. The mother initially completed a substance abuse evaluation and began the recommended treatment, but she was discharged from the program in November 2013 for lack of cooperation. Throughout the pendency of the case, the mother missed some drugs screens and at other times was not tested

---

[1] The parental rights of both A.K.'s father and A.W.'s father were also terminated. Neither father appeals.

because she admitted the results would show she had been using before the test was administered. The mother did not seek drug rehabilitation treatment again until June 2014. She initially failed to participate as was required. From August 1, 2014, until the date of the termination hearing, September 23, 2014, the mother actively participated in the rehabilitation program. However, results from a sweat patch removed in early September 2014 showed the mother had used methamphetamine. A July 2014 test had similarly shown she was using methamphetamine. At the termination hearing, the mother denied using after January 2014.

In January 2014, the mother's live-in boyfriend was arrested for committing domestic abuse. A no-contact order was originally in place but was later dropped, and the boyfriend moved back in to the mother's home. The mother married the boyfriend in August 2014. At the time of the termination hearing, they had recently begun attending counseling to work on their communication issues. The new husband had not yet taken the court-ordered batterer's education program. He tested positive for phencyclidine, more commonly known as PCP, in a recent drug test.

The mother completed a psychological evaluation in March 2014. Although mental health counseling was recommended, the mother did not start attending therapy until August 19, 2014.

At the termination hearing, the mother did not dispute that the statutory requirements for termination had been met. Rather, she requested an additional six months to work toward reunification. Both the care coordinator and the guardian ad litem testified that they believed termination was in the best interests

of the children. When asked about the children's bond with the mother, the care coordinator, testified, "I think they seem bonded. Probably—I think they seem bonded, but it's somewhat strained. I don't know that [A.K.] trusts her, but he loves her."

Following the termination hearing, the juvenile court issued a written ruling in which it denied the mother's request for the six-month extension. The court stated:

> In the month prior to the termination hearing, [the mother] began to engage herself with more services, however, she did miss another counseling appointment just prior to the termination hearing which calls into question her level of commitment. [The mother] is currently unemployed and dependent on her new husband for support. The relationship continues to have unresolved issues regarding substance abuse and domestic violence. The court finds [the mother's] recent improvement with services to be too little and much too late to warrant an extension of time.

The court terminated the mother's parental rights to A.K. pursuant to Iowa Code sections 232.116(1)(d) and (f). The court terminated the mother's parental rights to A.W. pursuant to sections 232.116(1)(d) and (h). The mother appeals.

## II. Standard of Review.

Our review of termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116. *Id.* Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

**III. Discussion.**

**A. Extension.**

The mother contends she should be given a six-month extension to pursue reunification with the children, pursuant to Iowa Code section 232.104(2)(b). She maintains that the progress she made in the month and a half leading up to the termination hearing is evidence that in six months the issues that led to removal of the children will no longer exist.

Although she disputes its accuracy, results from a drug test in September 2014 showed the mother had used methamphetamine. The mother made recent strides in attending visitation more regularly and in seeking mental health counseling, but she did not begin taking advantage of the services offered to her until almost one year into the case. Additionally, the mother had recently married. The new husband had a recent positive drug test and had yet to take batterer's education following his arrest for domestic abuse. The care coordinator testified about concerns regarding both the mother and husband's ongoing drug use, inability to communicate, and the possibility of additional instances of domestic violence. The guardian ad litem also took the position that the extension was not in the children's best interests.

Because the mother only became more involved with the offered services in the few weeks leading up to the termination hearing, we cannot say the issues that led to removal will no longer exist in six months. Children should not be forced to wait for their parent to be able to care for them, particularly when we have so little evidence to rely upon to believe the circumstances will be different in six months. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). We

agree with the district court that the extension is not warranted, and we consider whether the grounds for termination have been met.

**B. Grounds for Termination.**

Iowa Code chapter 232 termination of parental rights follows a three-step analysis. *P.L.*, 778 N.W.2d at 39. The court must first determine whether a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination has been established, the court must apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* Finally, if the statutory best-interest framework supports termination of parental rights, the court must consider if any of the statutory exceptions set out in section 232.116(3) weigh against the termination of parental rights. *Id.*

Although the juvenile court terminated the mother's parental rights on multiple grounds, the mother challenges only one of those grounds, section 232.116(d), on appeal. When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported by the record. *D.W.*, 791 N.W.2d at 707. The mother's failure to raise the remaining statutory grounds for termination waives any claim of error related to those grounds. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal.").

There is clear and convincing evidence the ground for termination of the mother's parental rights to A.K have been met pursuant to section 232.116(1)(f).

There is also clear and convincing evidence the ground for termination of her parental rights to A.W. have been met pursuant to section 232.116(1)(h).

There is no evidence that it would be in the children's best interests within the meaning of section 232.116(2) to maintain a parent-child relationship. Indeed, the mother does not identify any reason why it would be in the children's best interests to defer termination of her parental rights.

Iowa Code section 232.116(3) provides that "[t]he court need not terminate the relationship between the parent and child" under certain circumstances. A finding under subsection 3 allows the court not to terminate. *See P.L.*, 778 N.W.2d at 39. The factors weighing against termination in section 232.116(3) are permissive, not mandatory, and the court may use its discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). The mother contends terminating the parent-child relationship would be detrimental to the children due to the closeness of the relationship, pursuant to section 232.116(3)(c). The mother testified that she loves the children and that they often cry when her scheduled visits end. The care coordinator agreed that the children love their mother, but she also testified that A.K. does not trust his mother and that their bond is "strained" due to her past actions. Additionally, she testified that A.K. has been struggling with anxiety and that permanency was especially important for him. We acknowledge the mother loves and is bonded with the children, but we do not believe the permissive factor makes termination unnecessary in light of the children's need for permanency.

**IV. Conclusion.**

Because we cannot say the conditions that led to removal would no longer exist if the mother was granted a six-month extension, and the evidence in the record does not support the mother's assertion regarding the children's bond with her, we affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**